UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 MAY -7 P 5: 20

STEPHEN C. DRIES
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIE C. WADE,

    Defendant.

Case No.

[18 U.S.C. § 1343]

**19-CR-89**

## INDICTMENT

### Counts One through Three
### (Wire Fraud)

**THE GRAND JURY CHARGES:**

1. Beginning by April 13, 2017, and continuing through on or about March 21, 2018, in the State and Eastern District of Wisconsin and elsewhere,

**WILLIE C. WADE**

knowingly devised and participated in a scheme to defraud an individual and a business seeking licenses to operate in the City of Milwaukee, and to obtain money from that individual and business by means of materially false and fraudulent pretenses and representations.

### Background

2. At all times relevant to this indictment, individuals and corporations seeking to operate businesses in the City of Milwaukee needed to obtain appropriate licenses. Applications for licenses typically were considered first by the Milwaukee Common Council's Licenses Committee and then by the full Common Council.

3. From 2003 through February 2016, Wade served on the Common Council as Alderman for the Seventh District.

4. In 2016, "Company X" applied for the licenses required to operate a gentlemen's club (a/k/a strip club) in downtown Milwaukee. Company X's application was scheduled to be considered by the Licenses Committee and Common Council in April 2017.

5. At all times relevant to this indictment:

   a. "Cooperating Individual A" was a local business owner with an interest in Company X; and

   b. "Alderman B" was a member of the Milwaukee Common Council and served on the Licenses Committee.

## The Scheme to Defraud

6. The essence of Wade's scheme was to obtain money from Cooperating Individual A by falsely claiming that he was negotiating on behalf of Alderman B for a bribe in exchange for a vote in favor of Company X's license application when, in fact, Alderman B was not aware of Wade's representations and had never offered or agreed to accept any bribe.

7. As part of the scheme:

   a. Wade represented to Cooperating Individual A and a business associate that he could obtain votes for Company X's application but would need to be paid.

   b. Wade asked Cooperating Individual A to provide "some numbers" as to how much Alderman B's vote was worth.

   c. Wade told Cooperating Individual A that a payment of $15,000 ($10,000 to Alderman B and $5,000 to Wade) would result in a "done deal."

   d. Wade sought to increase the amount of the purported bribe by: (1) giving a handwritten note to Cooperating Individual A, demanding "20k cash by midnight Sunday night"; (2) falsely stating that the note contained Alderman B's "conditions"; and (3) falsely claiming that Wade had convinced Alderman B to lower his demand from $50,000.

2

e. Wade falsely represented that if Alderman B did not receive a bribe, he planned to abstain from voting on Company X's application.

f. Wade provided false explanations regarding why Cooperating Individual A could not speak directly to Alderman B, including that: (1) Wade's phone was tapped; (2) Wade trained Alderman B to use "layers"; and (3) if their conduct were discovered, Cooperating Individual A and Alderman B could testify that they had never discussed a bribe and could pass "lie detector" tests.

g. To convince Cooperating Individual A to pay the purported bribe without directly speaking to Alderman B, Wade at times showed Cooperating Individual A the call history on his phone to prove that Wade was in regular contact with Alderman B.

h. To convince Cooperating Individual A to pay the first $10,000 of the purported bribe without speaking to Alderman B, Wade sent a text message to Alderman B in Cooperating Individual A's presence, which read, "We all good with the home team." Wade falsely claimed that this was a pre-arranged code to alert Alderman B that the bribe had been paid.

i. In April 2017, after the Licenses Committee postponed consideration of Company X's application, Wade returned the initial $10,000 payment received from Cooperating Individual A, explaining that they could repeat the payment process before the next hearing.

j. In May 2017, to convince Cooperating Individual A to pay the purported bribe without speaking to Alderman B, Wade allowed Cooperating Individual A to listen as Wade called Alderman B using the speakerphone function on his cell phone. In these calls, Wade mentioned the upcoming vote on the application but did not refer to any bribe. During one of the calls, Alderman B told Wade he was not sure whether he would vote in favor of the license. After that call, Wade assured Cooperating Individual A that he would take care of the situation, and Cooperating Individual A offered a revised payment of $30,000, including an additional $5,000 for Alderman B and an additional $5,000 for Wade.

k. On May 8, 2017, just before the Licenses Committee voted on Company X's application, Wade met with Cooperating Individual A to obtain an initial payment of $15,000 in cash.

l. On May 9, 2017, after the Common Council voted to approve Company X's application, Wade arranged to meet with Cooperating Individual A to obtain an additional $15,000 in cash.

3

8. To conceal his scheme, Wade directed Cooperating Individual A not to talk about the purported bribe with anyone, explaining that Alderman B would act like nothing had happened and that Wade would remain silent until he sees "St. Peter . . . at the gate."

9. As a result of the scheme, Wade fraudulently obtained $30,000.

## Executions of the Scheme

10. On or about the dates listed below, for the purpose of executing his scheme and attempting to do so, Wade caused the following wire communications to be transmitted in interstate commerce, between the Eastern District of Wisconsin and the Northern District of Illinois:

| Count | Date / Time | Description |
|---|---|---|
| 1 | April 17, 2017 1:07 p.m. | Text message from Wade to Alderman B in the presence of Cooperating Individual A, stating, "We all good with the home team," which Wade falsely represented to be a pre-arranged code. |
| 2 | May 8, 2017 10:53 a.m. | Text message from Wade to Alderman B in the presence of Cooperating Individual A, stating, "Call me ASAP," which Wade sent as part of an effort to convince Cooperating Individual A to pay Wade without speaking directly to Alderman B. |
| 3 | May 9, 2017 1:20 p.m. | Text message from Wade to Cooperating Individual A asking to meet at 5:15 p.m. so that Cooperating Individual A could pay Wade $15,000 in cash following the Common Council's vote on Company X's application. |

Each in violation of Title 18, United States Code, Sections 1343 & 2.

4

## Forfeiture Notice

1. Upon conviction of one or more of the wire fraud offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Three of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense or offenses of conviction. The property to be forfeited includes, but is not limited to, a sum of money equal to the proceeds derived from the offense.

2. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON
Dated: 5/7/19

_____
MATTHEW D. KRUEGER
United States Attorney